1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JERROD FINDER, on behalf of himself            Case No.  1:13-cv-2059-AWI-BAM
     and on behalf of all other similarly situated
12   individuals,                                   **ORDER ON DEFENDANTS' MOTION TO**
                                                    **LIMIT PLAINTIFF'S COUNSEL'S**
13                 Plaintiffs,                      **COMMUNICATIONS WITH PUTATIVE**
                                                    **CLASS MEMBERS**
14          v.

15   LEPRINO FOODS COMPANY and
     LEPRINO FOODS DAIRY PRODUCTS
16   COMPANY,

17                 Defendants.

18

19   and Related Consolidated Action

20

21                      **I.      INTRODUCTION**

22          Before the Court is Defendants' Motion to Limit Plaintiff's Counsel's communication

23   with the putative class via an online Facebook.com group ("Facebook group"), which is dedicated

24   to a discussion about the underlying consolidated putative class action.[1]  (Doc. 74).  Plaintiff filed

25   his opposition to the Motion on January 6, 2017. (Doc. 75).  Defendants filed a reply on January

26   13, 2017.   (Doc. 76).   The Motion was heard on January 20, 2017, before United States

27   _____

28   [1]         This putative class action, in which Jerrod Finder is named plaintiff, has been consolidated with *Talavera v.*
     *Leprino*, 1:15-cv-105-AWI-BAM, in which Jonathan Talavera is a named plaintiff.  (Doc. 63).

                                          1

1  Magistrate Judge Barbara A. McAuliffe. Attorneys Philip Downey and Morris Nazarian appeared

2  by telephone on behalf of consolidated Plaintiffs Jerrod Finder and Jonathon Talavera.  Attorney

3  Kyle Mabe appeared by telephone on behalf of Defendants Leprino Foods Company and Leprino

4  Dairy Products ("Leprino" or "Defendants").   (Doc. 79).   Having considered the motion,

5  argument presented at the hearing, as well as the Court's file, Defendants' Motion to Limit

6  Plaintiff's Counsel's Communications is DENIED.

7                                    **II.      BACKGROUND**

8          **A.      Overview of the Facts**

9          On November 15, 2013, Plaintiff Jerrod Finder filed a wage and hour class action against

10  Leprino, alleging California Labor Code violations including failures to provide a second meal

11  break or accurate itemized statements, waiting time violations, Unfair Business Practices Act

12  violations, and Private Attorneys General Act claims based on those substantive violations.

13  Plaintiff's proposed class consists of all hourly, non-exempt employees of Leprino and the class

14  period runs from November 15, 2009 to November 15, 2013.

15          Following a number of dismissals, amendments to the complaint, and a petition for

16  appeal, Plaintiff's claims now proceed under his Second Amended Complaint. On August 1,

17  2016, this Court certified for interlocutory appeal the question of whether meal period premiums

18  are wages or penalties under California law. The appeal was accepted by the Ninth Circuit Court

19  of Appeals on October 19, 2016.

20          In light of the interlocutory appeal, on November 11, 2016, Defendants filed a Motion to

21  Stay this action to be heard by the United States District Judge assigned to this matter.  (Doc. 62).

22  As of the signing of this order, a ruling on the Motion to Stay is pending.

23          **B.      Nature of the Communications**

24          Leprino argues that Plaintiff's counsel's communications with putative class members in

25  the Facebook group were inappropriate and intentionally misleading with the intent to harass

26  Leprino employees and create a disruptive effect among the Leprino organization.  Specifically,

27  Leprino alleges that sometime in October 2016, Plant Manager Robert Tuttrup received reports

28  from several Leprino employees stating that their names, as well as the names of Leprino

supervisors and other putative class members had been published in several posts in a semi-private "Facebook group" about the *Talavera v. Leprino Foods* lawsuit. Declaration of Sandra Rappaport ("Rappaport Decl."), ¶2; Declaration of Robert Tuttrup ("Tuttrup Decl."), ¶ 2. Leprino alleges that the Facebook group was created by Plaintiff's counsel and was comprised of some of Leprino's putative class member past and current employees. Rappaport Decl., ¶2.

Using the Facebook group, counsel for Plaintiff, Phillip Downey ("Mr. Downey"), named the 27 individuals, whose declarations were submitted by Leprino in support of its opposition to class certification, asking those in the group to notify him "if you know anything about the following individuals who are testifying for Leprino." Rappaport Decl., ¶4, Ex. A, pgs. 3-4. In another post, Mr. Downey identified a single employee (Stephanie Leonard), indicated the department she worked in, and quoted a section of her declaration. Rappaport Decl., ¶4, Ex. A, pg. 5. Mr. Downey then indicated that Ms. Leonard's declaration was contrary to hundreds of other employee statements, and asked that Facebook group members contact him with reasons why Ms. Leonard would provide conflicting information. *Id.* In response to that post, other Leprino employees responded with suggestive statements including "someone got promise [sic] a promotion lol," and "You know that's true." *Id.* Defendants' argue that this commentary which originated from Mr. Downey's suggestive statement falsely insinuates that the declaring employee lied in her declaration in return for an employment benefit. *Id.*

Mr. Downey posted other comments on the Facebook page about other named putative class members, which Defendants' again argue insinuated that those employees may have lied for some improper benefit including: "How did FRANZ EMERSON make the leap from Purchasing clerk to Supervisor in Warehouse w/o ever having worked a Red Hat, or even in the Warehouse before being made a supervisor?" Rappaport Decl. ¶4, Ex. A, pg. 2. Another of Mr. Downey's posts states "If anyone knows how Monica Mata was promoted so quickly at Leprino, with specific information, including names, please contact me privately." *Id.*

Defendants also include screenshots of several inquiries by Mr. Downey asking for Leprino employees to privately provide information about other Leprino employees who provided declarations in support of Leprino. Rappaport Decl. ¶4, Ex. A.

### C.    Parties' Positions

Leprino argues that Mr. Downey's communications: (1) violate the Court's protective order; (2) implied false accusations by insinuating that certain Leprino employees received special treatment or promotions in return for providing untruthful declarations supportive of Leprino; and (3) are not protected by attorney-client privilege. (Doc. 74). Collectively, Leprino argues that Mr. Downey's conduct is likely to have a chilling effect on employees who are willing to speak on behalf of Leprino in this lawsuit thereby hampering Defendants' ability to defend against this case.

Also particularly troubling to Defendants are that Mr. Downey's comments appear in an online public forum which Defendants argue amplifies the comments harmful nature.   (Doc. 74 at 13); *Abdallah v. The Coca-Cola Company*, 186 F.R.D. 672, 678 (N.D. Ga. 1999) (Court held that the widespread dissemination of the complaint via a website could be used by the Plaintiff to coerce the defendant into settlement and potentially caused "serious and irreparable harm to Defendant's reputation and its relationship with its employees."). According to Defendants, the specific purpose behind Mr. Downey's comments is to create discord among the Leprino workforce and silence employees supportive of Leprino's position.  (Doc. 74 at 14).

Plaintiff responds that, contrary to Leprino's allegation, the private Facebook group was created by a former Leprino employee, not counsel. Declaration of Phillip Downey ("Downey Decl."), ¶4-5. The former employee—entirely on her own initiative and without any encouragement from or suggestion by Plaintiff's Counsel—created a private Facebook group to let other current and former employees know about the case. Downey Decl. ¶5.  Mr. Downey claims that he was invited to join the private group after the former employee asked Plaintiff's Counsel if he would like to be "added" to the group. Downey Decl. ¶6. Plaintiff's Counsel said "yes." Downey Decl. ¶6.

Nevertheless, Plaintiff argues that the Facebook group is an entirely appropriate way to communicate with the putative class. According to Plaintiff, Mr. Downey's comments in the Facebook group are aimed at vetting Leprino's declarations, which is counsel's duty.  (Doc. 75 at 3). Moreover, Defendants have not presented any evidence from witnesses declaring that they

1  have been harassed or intimidated in response to Mr. Downey's participation in the Facebook

2  group.

3         **D.**    **Corrective Communication and Other Relief Requested**

4        Defendant moves for a number of curative measures to remedy the alleged harm caused

5  by Mr. Downey's communications in the Facebook Group including:

6        (1) prohibiting Plaintiff's counsel from further participating in the Facebook group or

7  communicating with the putative class members via any other social media or mass electronic

8  communication platform such as group texting or emailing;

9        (2) requiring Plaintiff's counsel to remove any and all misleading ex parte

10  communications from Facebook or other social media along with any comments made by group

11  members in response;

12        (3)   requiring Plaintiff's counsel to post a curative notice stating that his previous

13  description of the testimony given by Leprino declarants was false, that no Leprino employee

14  received any benefit or promise of benefit from testifying, and that no Leprino employee will be

15  penalized for assisting Leprino by providing truthful testimony in this matter; and

16        (4)   requiring Plaintiff's counsel to "freeze" the group page so that the only post to

17  appear from the date the Order is issued is the curative notice and so that no additional postings

18  can be made by counsel or any other Facebook account-holder.  (Doc. 72 at 2).

19            **III.**    **LEGAL STANDARD**

20        Federal Rule of Civil Procedure 23(d) provides that "the court may issue orders" that

21  "require—to protect class members and fairly conduct the action—giving appropriate notice to

22  some or all class members of any step in the action," "impose conditions on the representative

23  parties," or "deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1). "Subdivision (d) is

24  concerned with the fair and efficient conduct of the action . . . ." Fed. R. Civ. P., Adv. Comm.

25  Notes.

26        **"**Because of the potential for abuse, a district court has both the duty and the broad

27  authority to exercise control over a class action and to enter appropriate orders governing the

28  conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). In particular, a

district court has the power to "limit[] communications between parties and potential class members." *Id.* at 101. *Gulf Oil* noted the "obvious potential for confusion" and adverse effect on the "administration of justice" that misleading communications may cause. *Id.* at 100 n. 12 (quoting *Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 782 (E.D. La. 1977)).  The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but also to safeguard generally the administering of justice and the integrity of the class certification process.

> A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class. Certainly communications that seek or threaten to influence the choice of remedies are . . . within a district court's discretion to regulate.

*In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988). In *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74, 181 L. Ed. 2d 1 (2011), the Ninth Circuit similarly noted, "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation."

## IV.   DISCUSSION

### A.   Whether Plaintiff's Counsels Communications Were Improper

The Court is endowed with "both the duty and the broad authority to . . . enter appropriate orders governing the conduct of [class] counsel and parties." *Gulf Oil Co.*, 452 U.S. at 101. While the Rules of Professional Conduct do not bar communications with putative class members by an opposing party, a court may choose to restrict such pre-certification communications if presented with "a clear record and specific findings that reflect . . . the need for a limitation and the potential interference with the rights of the parties." *Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002). A restriction on communications between counsel and putative class members should be based on whether the communication at issue is "misleading or improper." *Id.*

Mr. Downey argues that prospective class counsel is not prohibited from communicating with prospective class members.  Further, that the Facebook group is a perfectly appropriate means for class counsel to communicate with potential class members and witnesses.  (Doc. 75 at 3).  However, this does not mean that prospective class counsel can communicate with the putative class in a misleading or improper way.  Leprino argues that Mr. Downey's communications were misleading because they implied false allegations and are harmful because they disrupt Leprino's corporate morale.  For the reasons stated below, the Court is not persuaded that Mr. Downey's comments were harmful or misleading to warrant judicial intervention.

By all indications, the Facebook group at issue, here, is one lawfully created by an interested potential class member.  Mr. Downey's opposition and supporting declaration states, without equivocation, that he and his law firm were not responsible for the creation of the Facebook group.  It was an employee who invited Mr. Downey to join the private Facebook group.   Downey Decl. ¶ 6. He merely consented to that request. This factor is important because the origins of the relationship between class counsel and the putative class is a distinction that matters under current case law evaluating pre-certification communications by counsel.

In the related and consolidated case, *Talavera v. Leprino Foods Co*., 2016 U.S. Dist. LEXIS 29633, 14-15 (E.D. Cal. Mar. 8, 2016), this Court held that:

> Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication. *See Bobryk v. Durand Glass Manufacturing Co.*, No. 12-CV-5360, 2013 U.S. Dist. LEXIS 145758, 2013 WL 5574504, at *5-6 (D.N.J. Oct. 9, 2013) (noting "the absence of a bright-line rule controlling pre-certification communications" requires courts to "assess[] whether the factual circumstances surrounding *ex parte* communications warrant the imposition of restrictions on speech"). A Court therefore "must examine 'the context in which the communications were made and the effect of the communications' in determining whether, and how much, communication should be restricted." *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1108-09 (D. Colo. 2013) (finding defendants' misleading statements about potential monetary consequences of outcome "likely to confuse, if not coerce").

This Court further recognized that the potential for abusive or coercive statements is particularly high in an employer/employee context.  *See Talavera*, 2016 U.S. Dist. LEXIS 29633,

at *13; *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) ("The caselaw nearly universally observes that employer-employee contact is particularly prone to coercion").  That reasoning guides the Court's analysis here.

Absent from the communications here is any potential for coercion or undue influence by Plaintiff's counsel. Because neither Mr. Downey nor his law firm created the Facebook group, the Court has little concern that members are being harassed or improperly influenced in their voluntary communications with Mr. Downey. Mr. Downey is an advocate for his position in this law suit; a position that members can freely take or leave.   Mr. Downey's participation in this Facebook group is therefore no more than Plaintiff's counsel's engagement in pre-certification communications with potential class members.  As recognized by Defendants, several of Mr. Downey's communications are directed at uncovering information (unflattering or otherwise) about potential witnesses for Leprino.  This is not improper.  The United States Supreme Court has recognized the importance of permitting class counsel to communicate with potential class members for the purpose of gathering information, even prior to class certification. *Gulf Oil Co.*, 452 U.S. at 102-03.  Further, in *Abdallah,* relied on by Defendants, the Court found

> Plaintiffs and their counsel are entitled to speak freely about this lawsuit with any potential class member that contacts them. Even though the class had not been certified in *Jackson*, the Eleventh Circuit let stand that portion of the district court's order that authorized Plaintiffs' "inquires and communication that would be allowable as a normal discovery matter, whether the . . . class is certified or not." *Id.* at 1008 n. 19 (citations omitted). Such communications, when initiated by potential class members and not Plaintiffs' counsel, are neither widespread nor injurious and the Court therefore permits Plaintiffs to: (1) discuss the merits of the suit with potential class members who contact them; (2) determine whether that potential class member possesses any evidence relating to the Complaint allegations; (3) prepare affidavits or other testimony in support of class certification or the merits of the case; and (4) discuss with potential class members the possibility of representation by Plaintiffs' counsel and of providing legal services to them.

> *Abdallah*, 186 F.R.D 672 at 677.

Like in *Abdallah*, arguably, the bulk of the comments made by Mr. Downey are aimed at "determin[ing] whether that potential class member[s] possess any evidence relating to the Complaint allegations."  *Id.* Moreover, Mr. Downey's inquiries regarding whether potential class

1    members know information about the employees who provided supportive declarations is within

2    the realm of reasonable discovery under Rule 26.  In general, under the Federal Rules of Civil

3    Procedure, any matter relevant to a claim or a defense is discoverable. Fed.R.Civ.P. 26(b)(1). The

4    broad scope of discovery under Rule 26(b)(1) encompasses any matter that is relevant to any

5    claim or defense in the case, including witnesses. See generally, *Oppenheimer Fund, Inc. v.*

6    *Sanders*, 437 U.S. 340, 351 (1978).

7          Other posts are less neutral: Mr. Downey's statements that one declarant's account was

8    different than accounts from hundreds of other employees, and questions about how two Leprino

9    declarants received promotions.  Mr. Downey asserts that these statements are benign, while

10   Defendants argue that the clear implication of these comments misleads their employees to

11   believe that certain other employees improperly perjured themselves in exchange for benefits.

12   (Doc. 76 at 5).

13         While the Court acknowledges that Plaintiff's counsel's comments may consist of

14   insinuations that cast Defendants and the supporting declarants in a negative light, those

15   comments do not mislead employees about their rights as potential class members. Mr. Downey's

16   comments do not create confusion or seek to influence whether members opt-in or opt-out of the

17   class.   Rule 23(d) grants "broad powers to make 'appropriate orders' and 'to enjoin

18   communications with class members to protect them from undue interference." *In re McKesson*

19   *HBOC, Inc. Sec. Litig*., 126 F. Supp.2d 1239, 1242 (N.D. Cal. 2000).  Defendants' arguments boil

20   down to concerns about whether Mr. Downey's comments potentially expose Leprino employees

21   to negative commentary or office gossip. Ultimately, however, case law does not require that

22   communications to potential class members be objective and neutral.  *Babbitt v. Albertsons Inc.*,

23   1993 U.S. Dist. LEXIS 21491 (N.D. Cal. Mar. 31, 1993).

24         Moreover, it is not enough that merely a potentially chilling effect on the litigation exists.

25   Leprino, out of fear of exposing their employees to further harassment, has declined to present

26   evidence that any members of the Facebook group have harassed Leprino employees in the

27   workplace. This leaves the Court to speculate whether the references to the employees in the

28   Facebook group are harassing enough to discourage employees from further participation on

9

behalf of Leprino in this suit. "[T]he mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules." *Gulf Oil*, 452 U.S. at 104, 101 S.Ct. at 2202. Defendants' purely speculative concerns regarding the prejudicial effect on employees supportive of Leprino therefore do not convince the court that judicial intervention is necessary here.

Finally, based on the record so far in this case, the Court does not find that the comments by Mr. Downey will produce a chilling effect.  First, the names of the Leprino declarants' and their supporting declarations were already publicly available on the Court's docket. Thus, there is little concern that Plaintiff's counsel is "outing" these individuals as showing support for Leprino. Second, as Defendants admit, Mr. Downey has already asked members of the Facebook group to refrain from "intimidating" Leprino witnesses by contacting them. Rappaport Decl., ¶3, 4, Ex. A, pg. 6.  Third, the statements are not misleading or abusive.  Because the Court finds judicial intervention unnecessary here, the Court will refrain from commenting on whether the corrective measures suggested by Defendants are constitutional. The Court will however briefly address Defendants other arguments regarding attorney client privilege and the protective order.

## B.      Attorney Client Privilege

Plaintiff is cautioned that his communications and comments made generally to this Facebook group may waive future claims to attorney-client privilege. The voluntary and public nature of these communications to individuals that may ultimately have no connection to this lawsuit may destroy the privilege. *In re Pac Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012); *see also Clady v. County of Los Angeles*, 770 F.2d 1421, 1433 (9th Cir. 1985) (the voluntary disclosure of a privileged attorney-client communication constitutes waiver).  The Court however does not rule on the issue at this time.

## C.      Stipulated Protective Order

Finally, Defendants' argument that Plaintiff's counsel's Facebook group communications violate the spirit of the stipulated protective order is misguided. In relevant part, the Protective Order states that:

To the extent Defendants produce to Plaintiff the names, home address, home telephone numbers or other personal contact information for any of Defendants' current or former employees ("putative class members"), such names and contact information will be deemed CONFIDENTIAL Protected Material. Plaintiff will not personally access or use any such information that may be produced by Defendants. If Plaintiff's Counsel desires to use any names and contact information of putative class members produced by Defendants to contact the putative class members, during Plaintiff's Counsel's initial communication with each putative class member, Plaintiff's Counsel must inform each putative class member that he or she has a right not to talk to Plaintiff's Counsel and that, if he or she elects not to talk to Plaintiff's Counsel, Plaintiff's Counsel will terminate the contact and not contact them again. During Plaintiff's Counsel's initial communication with each putative class member, Plaintiff's Counsel must inform each putative class member that the attorney representing Leprino in this matter is Sandra L. Rappaport of the law firm Hanson Bridgett LLP, and her telephone number is: (415) 777-3200, accompanied by a warning that Defendant's Counsel does not represent the putative class members in this matter.

Briefly summarizing, the Protective Order states that, if Defendants produce contact information for class members, Plaintiff's Counsel will not use such information to contact class members without a specified disclaimer. Order, Doc. 30, ¶ 12.5. As discussed above, Mr. Downey's participation in the Facebook group was by invitation from an interested class member. Potential class members that join the Facebook group must either request permission to join the group or consent to participation in the group if sent an invitation. This relevant portion of the Protective Order therefore does not apply to these circumstances. The text and spirit of the protective order is to preclude Plaintiff's counsel from using Defendants' phone list to cold call or harass Leprino employees who may not be interested in discussing the merits of this lawsuit. The Facebook group provides the opposite scenario. Potential class members interested in more information about the lawsuit are seeking out the Facebook group in order to gather additional details about the suit. Their consent to discuss the lawsuit with Plaintiff's counsel is undoubtedly tied to their membership in the Facebook group.

///

///

///

///

11

1

**V.    CONCLUSION AND ORDER**

2         For the reasons explained above, Defendants' Motion to Limit Facebook communications

3    is DENIED.

4

5    IT IS SO ORDERED.

6       Dated:   **January 20, 2017**              /s/ *Barbara A. McAuliffe*

7                                         UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28