1

2

3

4

5

6

7

8

9

10

11

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

12  JERROD FINDER, on behalf of himself
    and a class of others similarly situated,

13              Plaintiff,

14      v.

15

16  LEPRINO FOODS COMPANY, a Colorado
    Corporation; LEPRINO FOODS DAIRY
    PRODUCTS COMPANY, a Colorado
17  Corporation; and DOES 1 through 50,
    inclusive,

18              Defendants.

19

**CASE NO. 1:13-CV-02059-AWI-BAM**

**ORDER IMPOSING STAY**

20                    **I. Introduction**

21      On November 15, 2016, this Court consolidated two putative class actions by Plaintiffs

22  Jerrod Finder ("Finder") and Jonathon Talavera ("Talavera") (collectively "Plaintiffs") against

23  Leprino Foods Company and Leprino Foods Dairy Products Company (collectively "Leprino").

24  Doc. 63. This action proceeds on the now-consolidated claims by Plaintiffs against Leprino.

25  Plaintiffs allege California Labor Code violations including failures to compensate for all hours

26  worked, to appropriately compensate for overtime, to provide a second meal break or accurate

27  itemized statements, waiting time violations; Unfair Business Practices Act violations; and

28  Private Attorneys General Act claims based on the substantive violations.

Case 1:13-cv-02059-AWI-BAM   Document 81   Filed 01/20/17   Page 2 of 8

1    On August 1, 2016, before consolidation of the *Finder* and *Leprino* Actions, this Court

2  granted Leprino's motion in the *Finder* Action to certify an issue for interlocutory appeal. Doc.

3  49. The court certified the question of whether "failure to itemize or pay 'meal period premiums'

4  constitutes failure to itemize or pay 'wages'" but declined to stay proceedings pending the Ninth

5  Circuit's resolution of the matter. Doc. 49. In declining to issue the stay, the Court explained that

6  it denied the stay, in part, because "there [was] no guarantee the Ninth Circuit [would] accept the

7  appeal." Doc. 49 at 10.[1] On October 19, 2016, the Ninth Circuit Court of Appeal granted

8  permission for interlocutory appeal. In its November 15, 2016 order, this Court noted that its

9  prior concern that the Court of Appeal might not accept the appeal was a no longer valid basis

10 for denial of a stay. Accordingly, this Court ordered the parties to show cause why a stay should

11 not be granted in light of the pending appeal. After this Court's order to show cause was signed

12 but before it was docketed Leprino filed a motion to stay that is responsive to this Court's order.

13 Doc. 62. Plaintiffs oppose Leprino's order. Doc. 67.

14    For the following reasons, this action will be stayed pending the resolution of Leprino's

15 interlocutory appeal.

## II. Discussion

17 **A. Legal Standard**

18    An appeal from an interlocutory order does not automatically stay the proceedings, as "it

19 is firmly established that an appeal from an interlocutory order does not divest the trial court of

20 jurisdiction to continue with other phases of the case." *Plotkin v. Pacific Tel. and Tel. Co.*, 688

21 F.2d 1291, 1293 (9th Cir. 1982); *See* 28 U.S.C. § 1292(b). However, a district judge presiding

22 over an action from which interlocutory appeal has been granted may exercise its discretion to

23 impose a stay of proceedings if such a stay would "promote economy of time and effort for itself,

24 for counsel, and for litigants." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972);

25 *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see Landis v. North American Co.*, 299

26 U.S. 248, 254 (1936) ("Courts have the power to stay ongoing proceedings "incidental to the

27

28 _____

[1] The Court noted that "[t]he parties may wish to revisit this issue if the Ninth Circuit accepts the appeal." Doc. 49 at 10.

1 power inherent in every court to control the disposition of the causes on its docket with economy

2 of time and effort for itself, for counsel, and for litigants.").

3      A division has been identified in this Circuit regarding the appropriate standard by which

4 a district court is to exercise its discretion in whether to grant a stay. One line of authority, with

5 which this Court's prior order agreed, applies the factors considered in granting injunctive relief

6 to determine whether a stay pending resolution of an interlocutory appeal should be issued. *See*

7 *Pena v. Taylor Farms Pac. Inc.*, 2015 WL 5103157, *2 (E.D. Cal. Aug. 15, 2015); *Finder v.*

8 *Leprino*, 2016 WL 4095833, *5 (E.D. Cal. Aug. 1, 2016). That line of authority reads *Nken v.*

9 *Holder*, 556 U.S. 418, 433 (2009), and *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) to govern.

10 *See Pena*, 2015 WL 5103157, at *2. *Nken* and *Hilton* set forth a "four-factor" "traditional test for

11 stays": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on

12 the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

13 issuance of the stay will substantially injure the other parties interested in the proceeding; and (4)

14 where the public interest lies." *Nken*, 556 U.S. at 433-434 (quoting *Hilton*, 481 U.S at 776).

15      Another line of authority explains that *Nken* and *Hilton* "traditional test" applies only

16 when a party seeks the stay of execution of a judgment or order that modifies the status quo

17 pending the resolution of the correctness of that order or judgment by the appellate court.

18 *Consumer Cellular Inc. v. ConsumerAffairs.com*, 2016 WL 7238919, *3-4 (D. Or. Sept. 26,

19 2016) ("*Consumer Cellular*"); *American Hotel & Lodging Assn. v. City of Los Angeles*, 2015

20 WL 10791930, *3 (C.D. Cal. Nov. 5, 2015) ("*American Hotel*"). Where a party seeks stay of the

21 action pending interlocutory appeal, a different standard applies. *Id.*; *Rollins v. Dignity Health,*

22 2014 WL 6693891, *4-5 (N.D. Cal. Nov. 26, 2014). Of those Courts that have declined to apply

23 an injunction-type standard for imposition of a stay set out in *Nken* and *Hilton*, some would

24 instead have district courts in determining whether to stay the action, weigh the *Landis* factors

25 (the factors considered when determining whether to stay an action pending the outcome of a

26 separate judicial proceeding): "[(1)] the possible damage which may result from the granting of a

27 stay, [(2)] the hardship or inequity which a party may suffer in being required to go forward, and

28 [(3)] the orderly course of justice measured in terms of the simplifying or complicating of issues,

3

1  proof, and questions of law which could be expected to result from a stay." *Rollins v. Dignity*

2  *Health,* 2014 WL 6693891 at \*4-5 (quoting *CMAX, Inc. v. Hall*, 300 F.2d at 268); *Lockyer v.*

3  *Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).  Other courts suggest a variation on the

4  *Landis* factors: "whether (1) resolution by the Ninth Circuit of the issue addressed in the

5  appealed order could materially affect this case and advance the ultimate termination of litigation

6  and (2) whether a stay will promote economy of time and effort for the Court and the parties."

7  *American Hotel*, 2015 WL 10791930 at \*3 (citing, *inter alia*, *Landis*, 299 U.S. at 254-255;

8  *California Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 2008 WL

9  8050005,\*9 (C.D.Cal. Dec. 8, 2008)). The split in authority requires deeper examination of *Nken*

10 and *Hilton*.

11      The courts in *American Hotel* and *Consumer Cellular* are correct that *Nken* and *Hilton*

12 both dealt with stay of lower court orders requiring that the government take some action

13 pending review of those orders. *Nken*, 556 U.S. at 423; *Hilton*, 481 U.S. at 775.  Specifically,

14 *Nken* involved the stay of an order of deportation and *Hilton* involved the stay of issuance of a

15 writ of habeas corpus. *Id.* The *Nken* Court explained the reason for the overlap between the

16 "traditional test for stays" and the considerations applied in the preliminary injunction context.

17 *Nken*, 556 U.S. at 434. The two tests overlap "not because the two are one and the same, but

18 because similar concerns arise whenever a court may allow or disallow anticipated action before

19 the legality of that action has been conclusively determined." *Id*. The stay that the *Nken* Court

20 addressed was designed to preserve the pre-judicial-relief status quo pending the appellate

21 court's determination of the correctness of that relief. *Id*. The same was true of *Hilton*. *Hilton*,

22 481 U.S. at 775. In the case at bar, the Court did not alter the status quo; the court has granted no

23 relief. Instead, the Court now considers whether it should proceed forward on discovery, class

24 certification, and pre-trial litigation in this action in light of the potential that the appellate court

25 will determine that a large portion of the action should be dismissed, rendering much of the work

26 to be completed meaningless. The rationale for application of injunction-like stay considerations

27 simply does not apply where a district court stays an *action* during interlocutory appeal (rather

28 than enforcement of an order or judgment modifying the status quo pending an appeal to

1    determine the correctness of that relief). *See American Hotel*, 2015 WL 10791930 at *2;

2    *Consumer Cellular*, 2016 WL 7238919, *3-4.

3         Moreover, attempts to apply the four-step traditional test in the interlocutory context

4    often result in readings of the requirements that resemble the requirements for a *Landis* stay. For

5    instance, many district courts that have applied the *Nken* and *Hilton* four-step traditional test for

6    stay in the context of an interlocutory appeal (and in appealing a grant or denial of class

7    certification under Federal Rule of Civil Procedure 23(f)) have interpreted the irreparable harm

8    requirement to include substantial monetary harm resulting from conducting burdensome

9    discovery, motions practice, and trial preparation on issues that are the subject of the appeal. *See*

10   *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4397175, *3-4 (C.D. Cal. June 8, 2015);

11   *Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, *4 (N.D. Cal. Nov. 15, 2012); *Gray v.*

12   *Golden Gate Nat. Recreational Area*, 2011 WL 6934433, *2 (N.D. Cal. Dec. 29, 2011). As

13   Plaintiffs point out, many other courts have held that incurring litigation expenses (especially

14   discovery expenses), although burdensome is not irreparable harm sufficient to justify a stay if

15   those expenses would be inevitable regardless of the outcome of the appeal. *See Guifu Li v. A*

16   *Perfect Franchise, Inc.*, 2011 WL 2293221, *4 (N.D. Cal. June 8, 2011); *Altamura v. L'Oreal,*

17   *USA Inc.*, 2013 WL 453717, *5 (C.D. Cal. Aug. 26, 2013). The application of the irreparable

18   injury prong of the four-step test is far closer to the "hardship or inequity" consideration of

19   *Landis* then it is to the irreparable injury consideration in the preliminary injunction context. *See,*

20   *e.g., Rent-A-Center, Inc. v. Canyon Television & Appliance Rental Inc.,* 944 F.2d 597, 603 (9th

21   Cir. 1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because

22   such injury can be remedied by a damage award.")

23        Similarly, the likelihood of success on the merits step does not require a showing that the

24   proponent of the stay is more likely than not to win on the merits. Instead, depending on the

25   strength of the showing on other elements, the proponent of a stay may satisfy that step by

26   showing a "substantial case on the merits" or that "serious legal questions are raised." *Leiva-*

27   *Perez v. Holder*, 640 F.3d 962, 967-968 (9th Cir. 2011) (quoting *Hilton*, 481 U.S. at 778;

28   *Abbassi* v. I.N.S., 143 F.3d 513, 514 (9th Cir. 1998). A similar showing has already been made

1  on the issue in order to justify certification of interlocutory appeal in the first instance. *See* Doc.

2  49 at 5-7 (requiring a showing of a controlling question of law upon which there are substantial

3  grounds for difference of opinion).

4      In light of the foregoing discussion, the Court will apply the *Landis* factors in

5  determining whether to impose a stay.[2] The "proponent of a stay bears the burden of establishing

6  its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255). If there is

7  "even a fair possibility" of harm to the opposing party, the moving party "must make out a clear

8  case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *Lockyer v.*

9  *Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

10  **B. Analysis**

11      First, the Court considers the possible damage which may result from granting the stay.

12  *CMAX*, 300 F.2d at 268 (citing *Landis v. Northern American Co.*, 229 U.S. 248, 254-255

13  (1936)). In doing so, the Court recognizes that Plaintiffs will suffer delay if a stay is granted. *Cf.*

14  Doc. 49 at 7 (Although the appeal process "may be lengthy," it will "materially advance" the

15  resolution of this case.) Delay in payment of wages to employees causes the type of harm that the

16  Court must consider in determining whether to issue a stay. *Leyva v. Certified Grocers of*

17  *California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979); see *Smith v. Superior Court of Los Angeles*

18  *Cty.*, 39 Cal. 4th 77, 82 (2006). The Court also recognizes that the potential for witness

19  memories to fade could result in damage to Plaintiffs. However, based on discovery already

20  conducted pre-consolidation of this action and the status update safeguards that the Court will

21  impose, the court does not realistically expect that the delay will cause loss of crucial

22  information. *See, e.g.*, *Larson v. Transunion, LLC*, 2015 WL 3945052, *8 (N.D. Cal. June 26,

23  2015). Because there is a fair possibility of some cognizable harm to Plaintiffs if a stay is

24  entered, the court must determine whether Leprino has made clear case that it will suffer

25  hardship or inequity. *Lockyer*, 398 F.3d at 1112.

26      The Ninth Circuit has specifically held that "being required to defend a suit, without

27  ────────────

[2] Even assuming that the *Nken* and *Hilton* four-part traditional test should apply in this context, as applied it roughly
28  matches the considerations of the *Landis* test. Application of that test would not result in a different outcome.

6

1  more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis."

2  Lockyer, 398 F.3d at 1112. That said, forcing a party to conduct "substantial, unrecoverable, and

3  wasteful" discovery and pretrial motions practice on matters that could be mooted by a pending

4  appeal may amount to hardship or inequity sufficient to justify a stay. *See Pena*, 2015 WL

5  5103157 at *4.  Leprino contends that it will be forced to conduct discovery and motions practice

6  over discovery-related matters that may be rendered moot by the Ninth Circuit in resolving the

7  interlocutory appeal. The Court recognized as much when it noted the "trouble and expense" that

8  could be avoided for the parties and the court through "elimination of pre-trial litigation on non-

9  cognizable claims." Doc. 49 at 7. Those litigation expenses might be largely avoided by staying

10 the action pending resolution of the interlocutory appeal. Whether time and expense of discovery

11 will actually be avoided is largely dependent on the outcome of the interlocutory appeal.

12 However, the Court also considers the time to be expended on resolving questions of

13 certification, further dispositive motions practice, giving putative class members notice of

14 claims, and settlement discussions, all over claims that may be mooted by resolution of the

15 appeal. Forcing Leprino forward on the issues now pending on appeal would largely frustrate the

16 savings in time and effort that the grant of interlocutory appeal would otherwise provide. Moving

17 forward with this action would cause a potentially unnecessary hardship and would largely

18 thwart the purpose of the grant of interlocutory appeal. *See* Doc. 49; *Brown*, 2012 WL 5818300

19 at *4; *Pena* 2015 WL 5103157 at *4.

20      Finally, the court expects that the resolution of the issues now pending before the Ninth

21 Circuit will dramatically simplify the questions of law and potentially the questions of proof now

22 pending before the court. As the Court noted in certifying these issues for review, the "legal

23 question presented" has resulted in "varying conclusions" by district courts and has "evaded

24 Ninth Circuit review." Doc. 49 at 8. Allowing the Ninth Circuit to conclusively resolve the

25 validity of roughly half of Plaintiffs' claims (the type of which have escaped review in the past)

26 will dramatically clear the landscape of this action.

27      The Court previously denied a stay in this action, in part, because it was unclear whether

28 the Ninth Circuit would accept the question certified. Doc 49 at 10. Now that the Ninth Circuit

1  has taken up the issue, the balance has shifted in favor of imposing a stay. Leprino's motion to

2  stay this action will be granted.[3]

### III. Order

4      Based on the foregoing, IT IS HEREBY ORDERED that Leprino's motion to stay is

5  GRANTED. This action is STAYED pending issuance of a dispositive order on Leprino's

6  interlocutory appeal to the Ninth Circuit Court of Appeals.

7      The order to show cause issued on November 15, 2016 is DISCHARGED.

8      Leprino is ordered to provide status updates to this Court every sixty days beginning on

9  Tuesday, March 21, 2017. Leprino is further ordered to inform the Court within ten days of an

10 order resolving the issue on appeal.

11

12 IT IS SO ORDERED.

13 Dated:   January 20, 2017     _____

                          SENIOR DISTRICT JUDGE

---

28 [3] If any change in circumstance takes place during the appellate process either party is free to file a motion to lift the stay.

8